UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD BILLUE, | : | |
| Plaintiff | : | CIVIL ACTION NO. |
| | : | 3:05-cv-00170 (JCH) |
| v. | : | |
| | : | |
| PRAXAIR, Inc., | : | APRIL 26, 2007 |
| Defendant. | : | |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE [Doc. Nos. 35 & 63]**

## I.      INTRODUCTION

Plaintiff Edward Billue brings suit against defendant Praxair, Inc.  ("Praxair").  In

its Ruling on Praxair's Motion to Dismiss [Doc. No. 18], the court dismissed Counts

Two, Four, Five, Six, Seven, and Eight of Billue's Complaint [Doc. No. 1].  Billue's

remaining claims allege violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e et. seq. (Count One) and the Civil Rights Act of 1866 as amended by the Civil

Rights Act of 1991, 42 U.S.C. § 1981 (Count Three).

Praxair has filed a Motion for Summary Judgment [Doc. No. 35] as to Billue's

remaining claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Praxair

has also filed a Motion to Strike [Doc. No. 63].

## II.      STANDARD OF REVIEW

In a motion for summary judgment, the burden lies on the moving party to

establish that there are no genuine issues of material fact in dispute and that it is

entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c)); Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 256 (1986); SCS Communications, Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004). The moving party may satisfy this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted); accord Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . ." Miner v. City of Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993) (internal quotation marks and citation omitted). A dispute regarding a material fact is genuine, "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992)). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523 (internal citation omitted). Thus, "'[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper.'" Id. (quoting Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), cert. denied, 502 U.S. 849 (1991)); see also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir.

1992) ("Viewing the evidence in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is inappropriate.").  "'If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'"  Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (quoting Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996)).

When a motion for summary judgment is supported by sworn affidavits or other documentary evidence permitted by Rule 56, the nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading."  Fed. R. Civ. P. 56(e); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Rather, "the [nonmoving] party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial" in order to avoid summary judgment.  Id.  "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture."  Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted).  Similarly, a party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible.  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

## III.  FACTUAL BACKGROUND[1]

Billue, an African American male, is a truck driver for Praxair, a position he has

held with Praxair or its affiliates for over twenty-nine years.  See Def.'s Loc.R.Civ.P.

56(a)1 Statement ("Def.'s Stat.") at ¶ 2 [Doc. No. 36].  Praxair is in the business of

producing and transporting industrial gases for business, industrial, and medical use.

Id. at ¶ 1.  Billue works out of Praxair's facility located in Suffield, CT, and is a member

of Teamsters Local 559.  Id. at ¶¶ 3, 5.

Praxair, as transporter of industrial gases, places great emphasis on safety and

security issues, of which Billue is aware due to many safety meetings he has attended.

Id. at ¶¶ 6-7.  Safety concerns grew more urgent to Praxair subsequent to the

September 11, 2001, terrorist attacks, especially with respect to Praxair's 18-wheeler

tanker trucks that are used to transport hazardous materials regulated by the U.S.

Department of Transportation.  Id. at ¶ 9.  Consequently, Praxair issued Trucking

Bulletin No. 342 in October 2001, which warned that, because Praxair plants and trucks

may be possible terrorist targets, "[a]ll Praxair employees, particularly drivers and

operators, must exercise increased awareness and added security precautions to

ensure continued safety of personnel and products."  Id. at ¶ 10.  Thus, for instance,

the Bulletin required drivers to ensure the truck's doors were locked even during brief

stops.  Id.  Billue admits he was fully aware of these safety rules, as they were

discussed in a special safety training session for Praxair's Suffield, CT, drivers held in

---

[1]For the purposes of the instant motion, the court accepts facts undisputed by the
parties as true and resolves disputed facts in favor of the non-moving plaintiff, where there is
evidence to support his allegations.

the fall of 2001.  Id. at ¶ 11.  Additionally, Billue received an updated handbook in

October 2002, which included the safety rules set forth in the Bulletin.  Id. at ¶ 12.

On July 10, 2003, at or around 3:00 p.m., the plant manager of Praxair's Suffield

facility at the time, Fred Ranck,[2] was driving from the Praxair facility in Tewksbury, MA,

to Connecticut, when he observed a Praxair 18-wheel tractor-trailer truck in a shopping

mall parking lot abutting the highway in Auburn, MA.  Id. at ¶ 14.[3]  In Ranck's

experience as plant manager of two facilities, a Praxair truck should not normally be

parked in the shopping mall parking lot.  Id. at ¶ 15.  Ranck thus drove to the parking

lot, where he found the truck unattended with the doors unlocked, the windows open,

and no wheel chocks under the wheels.  Id. at ¶ 16.  According to Ranck, he then

waited over twenty minutes for the driver, Billue, to return to the truck.  Id. at ¶ 17.

Billue was seen leaving Dick's Sporting Goods, carrying a shopping bag from that store.

Id. at ¶ 18.

BIllue told Ranck that he had pulled into the parking lot because he needed to

---

[2]Ranck was plant manager at that facility from August 2001 through September 2004.
He was also plant manager at Praxair's Tewksbury, MA, facility from July 1, 2003 through
September 2004.  Id. at 13.

[3]The court will deem any of Billue's responses to Praxair's 56(a)1 Statement that are
based on insufficient "knowledge or information" as admitted.  Furthermore, the court notes that
Billue's Local Rule 56(a)2 Statement failed to provide specific citations to the evidence in the
record, as is required by the Local Rule.  See D. Conn. L. Civ. R. 56(a)(3) ("Each statement of
material fact [and each denial] . . . by an opponent in a Local Rule 56(a)2 Statement . . . must
be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the
facts at trial and/or (2) evidence that would be admissible at trial.").  According to the Rule, such
failure "may result in sanctions, including, . . . when the opponent fails to comply, an order
granting the motion [for summary judgment]."  Id.  In the absence of proffered evidence to the
contrary, the facts set forth in the defendant's Local Rule 56(a)(1) Statement are deemed by the
court to be admitted by the plaintiff.  See S.E.C. v. Global Telecom Services, L.L.C., 325
F.Supp.2d 94, 109 (D.Conn.2004).

urinate, and that he did so outside the mall building.  Id. at ¶ 19.  He showed Ranck the

area outside of Dick's Sporting Goods where he had urinated, and provided Ranck with

a written statement of the same.  Id. at ¶¶ 19-20.  Upon returning to Praxair's Suffield

facility, Ranck informed Billue that he was immediately suspended, pending further

investigation of the incident, and confirmed this suspension by letter dated July 21,

2003.  Id. at ¶ 21.  Upon completion of his investigation on August 7, 2003, Ranck met

with Billue and his union steward, and Billue was suspended for sixty days.  Id. at ¶ 22.

According to a letter dated September 8, 2003, from Ranck to Billue which documented

this meeting, the sixty-day suspension in lieu of termination "was agreed by you, your

Praxair steward and myself."  Id. at Ex. 6.[4]  Leaving a tractor-trailer unattended and

unlocked constituted a violation of Praxair's safety rules.  Id. at ¶ 23.

Billue filed a complaint with the Connecticut Commission on Human Rights and

Opportunities ("CCHRO") on January 5, 2004, in which he claimed he was improperly

suspended on July 10, 2003 because of his race and color, and in retaliation for an

earlier complaint he had filed with the CCHRO on April 26, 2002.  Id. at Ex. 8.

IV.     DISCUSSION

        A.      **Title VII Claims** (Count One)

                1.      Disparate Treatment

Analyzing whether the defendants subjected Billue to disparate treatment must

---

[4]The court notes that although Billue denies that he agreed to the suspension in lieu of
termination, Billue has cited to no evidence in support of his denial.  See Plf.'s Loc.R.Civ.P.
56(a)2 Statement ("Plf.'s Stat.") at ¶ 22 [Doc. No. 42].  In fact, in his deposition Billue testified
that Ranck told him that he "can voluntarily quit or take a 60-day suspension," and Billue
answered, "Well, 60 days, I'll take 60 days."  See Plf.'s Ex. 1, Billue Dep. at 126 [Doc. No. 45].

be done under the burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 356 (2d Cir. 2001). The plaintiff is first required to establish a prima facie case of discrimination. <u>See</u> <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981). A prima facie case for disparate treatment is made out by showing that: (1) the plaintiff is a member of a protected class; (2) the plaintiff performed his job adequately; (3) the plaintiff suffered an adverse employment action; and (4) that the adverse employment action occurred under conditions giving rise to an inference of discrimination. <u>Burdine</u>, 450 U.S. at 254.

Once a plaintiff has established a prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. <u>See</u> <u>id.</u> Upon the employer's articulation of a nondiscriminatory reason for the employment action, the presumption of discrimination that arises with the establishment of the prima facie case drops out. <u>See</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 510-11 (1993). The burden then shifts back to the plaintiff to fulfill his ultimate burden of proving that the defendants intentionally discriminated against him in the employment action. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000). In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendant was not the employer's true reason, but was a pretext for discrimination. <u>Id.</u>

A prima facie case combined with a showing that an employer's asserted justification is false is sometimes, but not always, sufficient to permit a discrimination claim to survive summary judgment. <u>Schnabel v. Abramson</u>, 232 F.3d 83, 89-91 (2d

7

Cir. 2000) (citing Reeves, 530 U.S. at 142).  The court must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" Schnabel, 232 F.3d at 90 (quoting Reeves, 530 U.S. at 143).  The plaintiff need not show that race was the only factor motivating any adverse employment actions he suffered in order to make a showing of employment discrimination.  See 42 U.S.C. § 2000e-2(m); Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).  "The 'ultimate issue' in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' i.e., a discriminatory reason," regardless of whether the case is presented as one of single or dual motive.  Stratton v. Dep't for the Aging for New York, 132 F.3d 869, 878 (2d Cir.1997).

Praxair asserts that Billue has failed to make out a prima facie case of discrimination, because he cannot establish that his sixty-day suspension occurred under circumstances giving rise to an inference of discrimination, and that he cannot establish pretext.  To show that the adverse action he endured at Praxair took place under conditions giving rise to an inference of discrimination, Billue may demonstrate that the defendant "treated him less favorably than a similarly situated employee outside his protected group."  Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).  Billue must specifically show himself to be "similarly situated in all material respects" to the individuals with whom he compares herself.  Shumway v. United Parcel Serv. Inc., 118 F.3d 60, 64 (2d Cir. 1997).  The test for materiality asks whether Billue and the individuals against whom he compares himself were subjected to the same

workplace standards and whether the conduct at issue was of comparable severity.

Graham, 230 F.3d at 40 (citing Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 96

(2d Cir. 1999)).

Billue compares himself to J.F., a white Praxair truck driver, who only received a

two-week suspension after leaving his truck unattended and unsecured.  See Plf.'s

Memorandum in Opposition to Summary Judgment ("Mem. in Opp.") at 3-4 [Doc. No.

41].  Praxair argues that J.F. is not "similarly situated in all material respects," because

his conduct was not of comparable severity.  See Def.'s Memorandum in Support of

Summary Judgment ("Mem. in Supp.") at 15.  The court agrees.  J.F. did not urinate

outside in a public parking lot while driving a Praxair truck; J.F. only left his truck

unattended for five minutes, compared to at least twenty minutes; the rear trailer

compartment doors were not left unlocked; and J.F. left the truck within 100 yards of the

company's property, and thus under surveillance of Praxair's security cameras.  See

Def.'s Stat. at Ranck Aff. at ¶ 9; Billue Dep. at 171-72.  In his deposition, Billue even

acknowledged that his issues were "[i]n many different ways" different from J.F.'s.  Id. at

Billue Dep. at 172.

Moreover, Praxair has come forward with evidence that it has treated a white

employee similarly to Billue under similar circumstances.  R.D., a white truck driver, was

observed urinating in a customer parking lot, where he had parked to make a delivery to

a Praxair customer.  Id. at Ranck Aff. at ¶ 10.  R.D. left his truck unattended and

unsecured while urinating in the parking lot, and as a result, Ranck terminated R.D.'s

employment with Praxair.[5]  Id.; Billue Dep. at 183-84.  While Billue admits to these

facts, he also tries to distinguish R.D.'s situation, albeit with an argument the court does

not quite follow.[6]  However, the court need not decide if R.D. is in fact "similarly situated

in all material respects," especially since it already found that Billue's comparator, J.F.,

is not "similarly situated in all material respects" so as to create an issue of fact.

Thus, the court finds that Billue has failed to establish his prima facie case of

discrimination.  Even if the court assumes that he had established his prima facie case,

taking the evidence as a whole, Praxair has articulated a legitimate business reason for

the suspension, and Billue has come forward with no evidence of pretext.  The court

therefore finds that Billue has failed to create a material issue of fact as to whether

Praxair engaged in unlawful discrimination when it suspended him for sixty days.

Summary judgment is granted to Praxair on this claim.

### 2.  Retaliation – Exhaustion

Before addressing the substance of Billue's Title VII retaliation claim, the court

needs to address Praxair's argument that Billue failed to exhaust administrative

---

[5]R.D.'s termination was subsequently reduced to a sixty-day suspension, after the union filed a grievance challenging the termination.  Id.

[6]Billue states that R.D.'s public urination and leaving the truck unattended are "the only aspect[s] of the plaintiff's circumstances and [R.D.'s] situation that are similar."  See Plf.'s Mem. in Opp. at 6.  He then appears to argue that in his case, "[t]he urination and defecation incident was merely a collateral matter from the main concern of the plaintiff not securing a Praxair truck in the post 9/11-terrorism age."  Id.  However, the court does not find that this main concern was not present in R.D.'s case; indeed, his notice of suspension indicated that "there is a tremendous amount of emphasis placed on our own security and National security. . . . Your actions fly right in the face of Praxair's efforts and those of the Government of the United States of America."  See Plf.'s Ex. 9.  Billue further attempts to distinguish R.D.'s situation as being more severe than his own because "there is no evidence [R.D] has diarrhea and [R.D.] urinated in a customer's parking lot while making a delivery."  See Plf.'s Mem. in Opp. at 7.  The court does not find this difference to be as significant as Billue asserts.

remedies by not raising his claims asserted on pages 7-9 of his Memorandum in

Opposition before the CCHRO.[7]  A plaintiff must raise claims of discrimination at the

applicable administrative agency before pursuing those claims in federal court.  A claim

is exhausted if it was actually raised or is "reasonably related" to a claim raised.  Butts

v. City of New York Dep't of Housing Preserv. and Dev., 990 F.2d 1397, 1402 (2d Cir.

1992), superseded on other grounds by statute as stated in Hawkins v. 1115 Legal

Serv. Care, 163 F.3d 684 (2d Cir. 1998).

The Second Circuit has recognized three situations in which a claim is

"reasonably related."  First, a non-exhausted claim is "reasonably related" when its

omission is essentially due to "loose pleading," and when the claim is within the scope

of the investigation which would reasonably be expected to grow out of the agency

claim.  Butts, 990 F.2d at 1402.  The second type of allowed, related claim is one

alleging retaliation for filing a claim before the agency itself.  Id.  The third is where the

unexhausted claim is a post-agency incident of discrimination carried out in precisely

the same manner as the action complained of to the agency.  Id.

Since Billue appears to address his claims listed in his Memorandum in

Opposition as part of his Title VII retaliation claim, these claims are "reasonably related"

pursuant to Butts' second prong.  990 F.2d at 1402 ("The second type of 'reasonably

related' claim is one alleging retaliation by an employer against an employee for filing

an EEOC charge.").  The Second Circuit has explained that, "in such situations [of post-

charge retaliation claims], we have relaxed the exhaustion requirement based on the

---

[7]Billue's second CCHRO complaint, filed on January 5, 2004, appears to be directed
only at Billue's sixty-day suspension.  See Def.'s Stat. at Ex. 8.

close connection of the retaliatory act to both the initial discriminatory conduct and the filing of the charge itself." Id. "[R]equiring a plaintiff to file a second EEOC charge under these circumstances could have the perverse result of promoting employer retaliation in order to impose further costs on plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination." Id.

Here, along with his suspension claim, Billue claims that he was told by a co-worker that Praxair managers wanted to get rid of him through harassment; Ranck engaged in surveillance of Billue and required him to take 34 hours off from work for punching into work 35 seconds late; a white truck driver called him an offensive, racist name; and that he was unfairly reprimanded or criticized on various occasions.[8] Assuming all of these incidents occurred subsequent to Billue's filing of his first CCHRO charge in April 2002, the court finds that, for purposes of this motion, there was exhaustion of the retaliation claim.[9]

### 3.    Retaliation – Merits

A plaintiff makes a prima facie showing of retaliation by establishing "participation in a protected activity known to the defendant; an employment action disadvantaging the plaintiff; and a causal connection between the protected activity and the adverse employment action." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769

---

[8]Billue also lists twenty-seven individuals who allegedly have "either participated in the discrimination and retaliation the plaintiff faced or had personal knowledge of it." See Plf.'s Mem. in Opp. at 8-9. Without more evidence than this vague and conclusory statement, however, these allegations are insufficient to defeat summary judgment.

[9]The only claims that can be addressed before this court are those that arose after Billue filed the April 2002 CCHRO complaint.

(2d Cir. 1998) (quoting <u>Tomka v. Seiler Corp</u>, 66 F.3d 1295, 1308 (2d Cir. 1995)).

Within the context of Title VII claims, a "'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." <u>Cruz v. Coach Stores, Inc.</u>, 202 F.3d 560, 566 (2d Cir. 2000) (citing 42 U.S.C. § 2000e-3). There is no dispute that Billue's filing of a CCHRO charge constitutes a protected activity. There is also no dispute that Billue's sixty-day suspension in 2003 is considered an "adverse employment action" as the term is understood under Title VII. <u>See Galabya v. New York City Bd. of Educ.</u>, 202 F. 3d 636, 640 (2d Cir. 2000). With respect to Billue's other claims, they must be analyzed under the Supreme Court's ruling in <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, 126 S. Ct. 2405 (2006). Prior to this case, the Second Circuit generally looked to "whether the plaintiff has suffered 'a materially adverse change in h[is] employment status' or in the terms and conditions of his employment." <u>Kessler v. Westchester County Dep't of Social Servs.</u>, 2006 U.S. App. LEXIS 21530, at *20 (2d Cir. 2006) (quoting <u>Williams v. R.H. Donnelley, Corp.</u>, 368 F. 3d 123, 128 (2d Cir. 2004)). However, the Supreme Court's recent decision held that Title VII's anti-retaliation provision "does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace. . . . [It] covers those [and only those] employer actions that would have been materially adverse to a reasonable employee or job applicant." <u>White</u>, 126 S. Ct. at 2409. The focus must be on whether an employment action could be considered materially adverse to a reasonable employee, such that it could dissuade that employee "'from making or supporting a charge of discrimination.'" <u>Id.</u> at 2415, 2417 (citations omitted).

Billue's claim that he was told by a co-worker that Praxair managers wanted to

13

get rid of him through harassment is inadmissible hearsay and based on speculation,

and as such, cannot constitute an adverse employment action. The only basis for

Billue's claim is his deposition testimony, wherein he asserts that an unnamed driver

told him that Praxair "has been trying to get rid of a particular guy and they haven't

gotten rid of him yet." See Plf.'s Ex. 1, Billue Dep. at 209. Not only is this statement

inadmissible hearsay, but Billue in his deposition admitted that this other person only

talked about "he" and a "guy;" it was Billue who "assum[ed] he was talking about me."

Id. at 210. In order to defeat summary judgment, a plaintiff cannot simply rely on

"conjecture or surmise." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14,

18 (2d Cir.1995). Moreover, on summary judgment, the court may not consider

inadmissible evidence. Bridgeway Corp. v. Citibank, 201 F.3d 134, 142 (2d Cir.2000).

Thus, a claim supported only by Billue's bald assertions, which in this case are

inadmissible hearsay, cannot withstand summary judgment.

As for Billue's claim that a white truck driver called him "a stupid nigger,"

see Plf.'s Stat. at ¶ 27, Praxair argues that this incident occurred in 2001, prior to

Billue's filing his CCHRO charge, and thus cannot be a basis for his retaliation claim,

see Def.'s Mem. in Supp. at 12. Praxair argues for the 2001 date because Billue stated

in his deposition that the comment was made when Ranck first came to work at the

Suffield facility, which was in August 2001. Billue has not submitted any other evidence

of when this comment was made. However, even if the court assumes it was made

subsequent to the April 2002 CCHRO charge, the court cannot find that Praxair

engaged in any adverse employment action. Indeed, at his deposition Billue testified

that, when he complained to Ranck about the comment of his co-worker, Ranck put out

14

a notice warning against such type of behavior. Thus, the court finds that Billue has not

pointed to any adverse action taken by Praxair, his employer, during this incident.[10]

As for the other two claims – that Ranck engaged in surveillance of Billue and

required him to take 34 hours off from work for punching into work 35 seconds early;

and that he was unfairly reprimanded or criticized on various occasions – the court finds

that these do not constitute "adverse employment actions." See Nicastro v. Runyon, 60

F. Supp. 2d 181, 186 (S.D.N.Y. 1999) (finding that "many of the actions complained of

by plaintiff, such as scrutiny from his supervisors that he deemed excessive, requiring

documentation for sick leave, scrutiny of his wife's sick leave, the unexplained absence

of certain documents that he thinks should be in his employment file, or threatening to

investigate medical fraud, do not constitute 'adverse employment actions' and so

cannot be the basis of any claim of Title VII retaliation."). Most of these claims are not

accompanied by dates, and as such, the court cannot know if they took place before or

after Billue filed his April 2002 CCHRO complaint. Even assuming they occurred

subsequent to the filing, the court still finds that they do not constitute adverse

employment actions under the standard articulated in White. Being required to take 34

hours off after punching into work early was based on a regulation established by the

U.S. Department of Transportation that regulates the number of hours a driver may

work. See Def.'s Reply at 15. Requiring employees to follow federal regulations cannot

---

[10]As a matter of fact, Billue testified that he appreciated what Ranck did to resolve the matter. See Def.'s Reply at Billue Dep. Day 2 at 33 [Doc. No. 65].

be an act of retaliation.[11]  Moreover, with respect to being surveilled or reprimanded,

some of Billue's evidence is based in part on hearsay or conclusory, uncorroborated

statements and covers incidents occurring prior to his April 2002 charge.  Additionally,

the court does not find that being reprimanded for tardiness or surveilled on the job

constitutes an adverse employment action.  See Bennett v. Watson Wyatt & Co., 136 F.

Supp. 2d 236, 248 (S.D.N.Y. 2001) ("Courts in this district have found that reprimands,

threats of disciplinary action and excessive scrutiny do not constitute adverse

employment actions.").

Billue's final, undisputed, adverse employment action is the sixty-day suspension

he received in 2003.  Praxair argues that Billue cannot establish a causal connection

between the suspension and the filing of his April 2002 charge, thereby failing to

establish his prima facie case of retaliation.  The court agrees.  "Proof of causal

connection can be established indirectly by showing that the protected activity was

followed closely by discriminatory treatment . . . or through other evidence such as

disparate treatment of fellow employees who engaged in similar conduct . . . or directly

through evidence of retaliatory animus directed against a plaintiff by the defendant."

DeCintio v. Westchester County Medical Center,  821 F.2d 111, 115 (2d Cir.1987).  The

Second Circuit has not established a bright line rule for determining whether retaliatory

conduct "followed closely" a plaintiff's protected activity.  See Gorman-Bakos v. Cornell

Cooperative Extension of Schenectady County, 252 F.3d 545, 554 (2d Cir. 2001).  It

_____

[11]In addition, Billue asserts in his deposition that this occurred in March 2005, more than
one year after the filing of his second CCHRO complaint, almost two three years after the
suspension at issue in this case, and three years after Billue's first CCHRO complaint, and thus
is too far removed in time to constitute a causal connection.  See infra at 16-17.

has concluded that two years is too long a time to support an inference of a causal connection. Richardson v. New York State Dept. of Correctional Service, 180 F.3d 426, 447 (2d Cir. 1999). The Second Circuit, as well as district courts within the Second Circuit, have rejected finding a causal inference when there were gaps of three months, six months, eight months, one year, and eleven months between the filing of the complaint and the alleged retaliation. White v. Whitman, 99-CIV-4777, 2002 WL 776589, at *12 (S.D.N.Y. April 26, 2002)(citing cases). However, a court may overlook a longer gap in time between protected conduct and an adverse employment action where "the pattern of retaliatory conduct begins soon after the filing of the [ ] complaint and only culminates later in actual discharge." Marx v. Schnuck Markets, Inc., 76 F.3d 324, 329 (10th Cir. 1996) (Fair Labor Act retaliation claim) (citing Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 377 n. 4 (6th Cir.1984) (Title VII case)).

In this case, the relevant time frame is fifteen months – between the April 2002 CCHRO complaint and the July 2003 suspension – which is more time than has been found to be too long a time in some cases. See e.g., Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85 (2d Cir. 1990) (no causal connection where time between protected activity and adverse employment action was three months); Holt v. KMI-Continental, Inc., 95 F.3d 123, 130 (2d Cir. 1996) (no causal connection where protected action took place between one and three months before plaintiff's discharge). Based on this length of time, and because there is no evidence of a pattern of retaliatory conduct, the court finds that Billue has failed to create an inference of causation. Thus, the grants summary judgment to Praxair on this claim.

17

**B.     Section 1981 Claims** (Count Three)

Billue's Complaint also alleges that Praxair discriminated against him in violation

of his rights under 42 U.S.C. § 1981, as enforced through 42 U.S.C. § 1983.  Section

1981 provides that "[a]ll persons within the jurisdiction of the United States shall have

the same right in every State and Territory to make and enforce contracts . . . and to the

full and equal benefit of all laws and proceedings for the security of persons and

property as is enjoyed by white citizens."  42 U.S.C. § 1981.  To state a claim under

section 1981, a plaintiff must establish the following elements: "(1) the plaintiff is a

member of a racial minority; (2) an intent to discriminate on the basis of race by the

defendant; and (3) the discrimination concerned one or more of the activities

enumerated in the statute . . . ."  Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,

7 F.3d 1085, 1087 (2d Cir. 1993).

The Second Circuit has explained that "[m]ost of the core substantive standards

that apply to claims of discriminatory conduct in violation of Title VII are also applicable

to claims of discrimination in employment in violation of § 1981."  Patterson, 375 F.3d at

225.  Accordingly, for the same reasons that Billue cannot prevail on his Title VII claims

of intentional discrimination, he cannot prevail on his § 1981 claims.  See Lizardo v.

Denny's, Inc., 270 F.3d 94, 106 n.6 (2d Cir. 2001).  Billue's Memorandum in Opposition

also asserts two additional reasons for why Praxair violated section 1981: that Praxair

refused to allow him to file two grievances regarding the sixty-day suspension, and that

he has been denied the privileges of seniority.  See Plf.'s Mem. in Opp. at 9-10.

With respect to not being allowed to file his grievances, not only has Billue

produced no evidence that would create an inference of discrimination,[12] but the record

clearly shows that he had several opportunities to discuss the parking lot incident with

Praxair management as well as his union steward, and the record also reflects that

Billue, his union steward, and Praxair all agreed Billue would be suspended for sixty

days.  See Def.'s Stat. at Ex. 6.  Indeed, the September 8, 2003 letter from Ranck

documenting a meeting between all parties at the completion of the investigation into

Billue's misconduct specifically stated that "you, your Praxair steward and myself . . .

[agreed that n]o grievance will be filed over this suspension."  Id.  Thus, the court finds

that Billue has not created an issue of fact as to whether Praxair's alleged refusal to let

Billue grieve the suspension was because of discrimination.[13]

Finally, as for the seniority claim, Billue alleges that he was denied to work extra

hours despite having more seniority than some of his co-workers.  However, he has

provided no evidence that this refusal was based on his race.  First of all, the matter

was resolved to Billue's satisfaction after he brought it up with his union steward.

See Plf.'s Ex. 1, Billue Dep. at 208.  More importantly, the court has found only one

statement by Billue that references race with respect to this claim – i.e., his deposition

testimony that "there's whites below me that every day get a better trip, every day."  See

id. at 207.  However, this vague assertion, without more specific evidence of who these

---

[12]In fact, Billue's only evidence is one statement in his Affidavit asserting that "I attempted to file two grievances, on July 12, 2003 and on October 2, 2003, as allowed under my union contract, regarding the sixty-day suspension I received.  See Plf.'s Ex. 3, Billue Aff. at ¶ 1.

[13]In his Complaint, Billue asserts that he "reluctantly agreed to the suspension . . . [because] Plaintiff's union was not prepared to defend his rights per the contract."  See Complaint at ¶ 21.  Thus, any claim Billue has for failing to file a grievance on his behalf may lie against the union, but not Praxair.

19

other "whites" were, is not enough to overcome summary judgment.

## V.    CONCLUSION

For the foregoing reasons, Praxair's Motion for Summary Judgment [**Doc. No. 35**] is GRANTED.  Despite Billue not having filed a Memorandum in Opposition to the defendant's Motion to Strike, the court has considered all the evidence in making its Ruling, and thus Praxair's Motion to Strike [**Doc. No. 63**] is DENIED as moot.

The clerk is ordered to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 26th day of April, 2007.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge